**CELLULAR MOBILE SYSTEMS OF PENNSYLVANIA, Appellants,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

Celcom Communications Corporation of Pennsylvania, Automatic Wide-Area Cellular Systems, Inc., Intervenors.

**CELCOM COMMUNICATIONS CORPORATION OF PENNSYLVANIA, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

Cellular Mobile Systems of Pennsylvania, Automatic Wide-Area Cellular Systems, Inc., Intervenors.

**CELCOM COMMUNICATIONS CORPORATION OF PENNSYLVANIA, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

**Nos. 85–1070, 85–1079 and 85–1594.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 12, 1986.

Decided June 10, 1986.

As Amended June 30, 1986.

Edward P. Taptich, with whom Charles C. Hunter and Laura C. Mow were on the brief for Cellular Mobile Systems of Pennsylvania in Nos. 85–1070 and 85–1079.

Edgar F. Czarra, Jr. for appellants, Celcom Communications Corp. of Pennsylvania. Jonathan D. Blake, S. William Livingston, Jr., and Alan A. Pemberton were on the brief for Celcom Communications Corp. of Pennsylvania in Nos. 85–1070, 85–1079 and 85–1594.

Roberta L. Cook, Counsel, F.C.C., with whom Jack D. Smith, Gen. Counsel and David M. Armstrong, Associate Gen. Counsel, F.C.C. were on the brief for appellee in 85–1070, 85–1079 and 85–1594.

Lawrence M. Miller for intervenor Automatic Wide-Area Cellular Systems, Inc. in 85–1070 and 85–1079.

Michael L. Volkov, Stephen A. Weiswasser and Thomas J. Dougherty also entered appearances for intervenor, Automatic Wide-Area Cellular Systems, Inc. in 85–1070 and 85–1079.

Before MIKVA, EDWARDS and SCALIA, Circuit Judges.

Opinion for the Court PER CURIAM.

PER CURIAM:

Appellants Cellular Mobile Systems of Pennsylvania ("CMS") and Celcom Communications Corporation of Pennsylvania ("Celcom") are unsuccessful applicants for the Philadelphia nonwireline cellular telephone license. They challenge the decision of the Federal Communications Commission ("FCC") to award the license to Automatic Wide-Area Cellular Systems, Inc. ("AWACS"). We affirm the Commission's decision. Most of the arguments made by Celcom and CMS focus on issues that have already been resolved in previous cellular telephone appeals [1] or otherwise are without merit. Two contentions, however, warrant brief comment.

## I.

■ Celcom and CMS argue that, in evaluating the competing applications, the FCC erred in awarding AWACS a moderate preference for its superior assessment of relative demand. In particular, they claim that the AWACS market study merited no preference because it ignored the nonbusiness component of demand. We disagree. The FCC reasonably concluded that AWACS should receive a preference even though its demand estimates were based only on business users. None of the applicants' studies included nonbusiness users; and, in all other respects, the AWACS market study was, without doubt, superior to the studies of the other applicants. Moreover, AWACS did not merely assume that business users would be the only significant cellular telephone customers. Instead, AWACS conducted a residential survey, and, based on the results of this survey, the advice of its consultants, and its own business judgment, AWACS reasonably concluded that nonbusiness use would be insignificant.[2] Similar preferences have been given to market studies that excluded residential demand in the Chicago and Atlanta markets.[3]

Notwithstanding the claims made by Celcom and CMS, the FCC Final Decisions in the San Diego [4] and Phoenix [5] proceedings do not require a different result in this case. The cited unsuccessful applicant in Phoenix conducted no residential study, and based its assumption that residential demand would be insignificant solely on its "experience." Additionally, the Phoenix study had other serious defects—such as its assumption that paging service provides a good model for cellular telephone demand. The San Diego proceeding involved the *same* survey methodology at issue in Phoenix. Because the *same* applicant using the *same* study methodology was involved in both the Phoenix and San Diego

1. *See Celcom Communications Corp. v. FCC,* 789 F.2d 67 (D.C.Cir.1986) (*"New York"*); *Celcom Communications Corp. of Georgia v. FCC,* 787 F.2d 609 (D.C.Cir.1986) (*"Atlanta"*); *Cellular Mobile Sys. of Illinois, Inc. v. FCC,* 782 F.2d 214 (D.C.Cir.1986) (*"Chicago"*); *Cellular Mobile Sys. of Pennsylvania, Inc. v. FCC,* 782 F.2d 182 (D.C. Cir.1985) (*"Pittsburgh"*).

2. AWACS explained that businesses historically have been the primary users of mobile telephone service and that much of the residential demand shown by the market study reflected "demand overlap," *i.e.,* the extent to which business users employ their mobile telephones for residential use, and vice versa. Joint Appendix ("J.A.") 267. Moreover, although the study suggested high residential demand, AWACS reasonably concluded that the actual residential demand would be small because "a body of literature" established that residential demand stud-

ies are not reliable. J.A. 267–68. Finally, cellular telephone service initially will be relatively expensive so that business applications "will be the first and primary uses" during the 1983–1993 time frame of the AWACS study. J.A. 246.

3. *See Atlanta,* 787 F.2d at 614 n. 10; *Chicago,* 782 F.2d at 217–18.

4. *Gencom, Inc.* (*"San Diego Final Decision"*) FCC 85–109 (March 15, 1985), *aff'd sub nom. Metro Mobile CTS, Inc. v. FCC,* 789 F.2d 72 (D.C.Cir.1986) (order).

5. *Gencom, Inc.* (*"Phoenix Final Decision"*), 56 RAD.REG.2d (P & F) 1597 (1984), *reconsideration pending,* FCC 83–50 (Nov. 5, 1984), *appeal docketed sub nom. Cellular Mobile Sys. of Arizona, Inc. v. FCC,* Nos. 84–1542 & 84–1552 (D.C. Cir. Nov. 2, 1984).

proceedings, the FCC correctly concluded that the decision in Phoenix "compel[ed] a finding that [the applicant's] demand assessment [in San Diego] is defective." [6] We do not read the *San Diego Final Decision*, however, as embracing an FCC policy requiring the denial of a preference to any market study that ignores residential demand. Indeed, in the *San Diego Final Decision*, the FCC left open the possibility that an applicant who adequately explained an assumption that businesses would be the primary users could merit a preference.[7]

Therefore, as we understand current FCC policy, a business-only market analysis may warrant a preference when the applicant provides evidence—such as additional market studies of residential demand coupled with the exercise of business judgment and experience—that there is a sound basis for excluding consumer demand. This is particularly so when, as here, the applicant's study is otherwise qualitatively better than competing studies because it forecasts demand on the basis of more reliable data. We conclude that the FCC decision in this case was consistent with current policy.

## II.

Celcom argues that the FCC erred in refusing to reopen the record to examine the possible anticompetitive impact of the AWACS cellular telephone proposal on the Philadelphia paging market. Although this court remanded a similar issue in the *New York* appeal,[8] we conclude that no such action is required here. In *New York*, Celcom raised this issue in its exceptions to the Administrative Law Judge's decision. In marked contrast, however, in the instant proceeding Celcom raised this issue *after* Exceptions and Reply Exceptions to the

Administrative Law Judge's decision had been filed. Because Celcom easily could have raised this issue at an earlier stage in the proceeding, we affirm the Commission's conclusion that Celcom's request to reopen the record was untimely.

*Affirmed.*

---

6. *San Diego Final Decision,* FCC 85–109, slip op. at 12 (March 15, 1985).

7. The FCC explained:
   Moreover, in marked contrast to Gencom's unsubstantiated assumption that business would be the primary user of cellular service, the winning applicant in the Chicago proceeding substantiated its assumption with a twofold showing: a study showing that business is the primary user of conventional two-way radio as well as a showing that cellular service would be relatively expensive.
   *Id.*

8. *New York,* 789 F.2d 67, 70–71 (D.C.Cir.1986).